UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RAYMOND HAWKINS, | ) |
|        Plaintiff, | ) |
|        v. | ) No. 1:21-cv-01396-JMS-MJD |
| WENDY KNIGHT, SGT DUPREE, | ) |
|        Defendants. | ) |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Plaintiff Raymond Hawkins, an inmate the Correctional Industrial Facility in Pendleton, Indiana ("CIF") brought this lawsuit pursuant to 42 U.S.C. § 1983. Mr. Hawkins alleges that the defendants subjected him to unconstitutional conditions of confinement when they refused to allow him to leave his cell to urinate and delayed in providing him with clean clothes after he urinated on himself. The defendants have moved for summary judgment arguing that Mr. Hawkins failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act ("PLRA") before he filed this lawsuit. For the following reasons, the defendants' motion for summary judgment, dkt. [25], is **GRANTED**. This action is **DISMISSED WITHOUT PREJUDICE**.

I.
**LEGAL STANDARD**

A motion for summary judgment asks the Court to find that there is no genuine dispute as to any material fact and, instead, that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). "Material facts are those that might affect the outcome of the suit under applicable substantive law." *Dawson v. Jackson,* 803 F.3d 829, 833 (7th Cir. 2015) (internal

quotation omitted). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B).

The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018).

## II.
## BACKGROUND

### A. Offender Grievance Process

The Indiana Department of Correction ("IDOC") has a standardized grievance process. Dkt. 25-1 ¶¶ 5–9. The purpose of the grievance process is to provide prisoners committed to IDOC with a means of resolving concerns and complaints related to the conditions of their confinement. *Id.* ¶ 6. Mr. Hawkins does not dispute that he was aware of the grievance process. *See generally* dkts. 28, 29.

During the period relevant to Mr. Hawkins's complaint, the grievance process consisted of three steps: (1) a formal attempt to solve a problem or concern following unsuccessful attempts at informal resolutions; (2) submitting a written appeal to the Warden or his designee; and (3) submitting a written appeal to the IDOC Grievance Manager. Dkt. 25-1 ¶ 10; dkt. 25-2 at 3, 9–14. Successful exhaustion of the grievance procedure requires the prisoner to pursue all three steps of the process. Dkt. 25-1 ¶ 11.

The parties agree that Mr. Hawkins successfully completed the first step of the process. Their dispute centers on whether he completed the second and third steps.

As to the second step, to appeal a grievance response to the Warden or his designee, the prisoner must submit a Grievance Appeal form to the Offender Grievance Specialist ("Grievance Specialist") within five business days after the date of the grievance response. Dkt. 25-2 at 12. The Warden's/designee's appeal response must be completed within ten business days of receipt of the appeal. *Id.* at 13. The section of the policy addressing appeals to the Warden/designee ends with the following sentence: "If, after receipt of the appeal response, the offender is still dissatisfied, or no response is received within the time frame, they may appeal to the Department Offender Grievance Manager." *Id.*

Immediately below this sentence is a section titled, "DEPARTMENT OFFENDER GRIEVANCE MANAGER APPEALS." *Id.* That section states:

> If the offender wishes to appeal the Warden's/designee's appeal response, the offender shall check the "Disagree" box, sign, and submit the completed State Form 45473, "Offender Grievance Appeal," and any additional, pertinent documentation to the Offender Grievance Specialist within five (5) business days of the Warden's/designee's appeal response.
>
> The Offender Grievance Specialist shall scan and enter the completed State Form 45473 and any additional pertinent information received from the offender into the grievance database, within five (5) business days of receipt for the Department Offender Grievance Manager's review.

*Id.* The Offender Grievance Manager ("Grievance Manager") has ten business days to complete his/her investigation and submit a response to the appeal unless additional time is required to fully investigate the grievance. *Id.* The Grievance Manager's decision regarding the grievance is final. *Id.*

### B. Mr. Hawkins's Attempts to Exhaust

On April 18, 2021, Mr. Hawkins submitted a formal grievance about the issues addressed in this lawsuit. Dkt. 25-1 ¶ 29. The CIF Grievance Specialist denied Mr. Hawkins's grievance on April 19, 2021. *Id.* ¶ 30.

With their summary-judgment motion, the defendants submitted a declaration from Grievance Specialist Laura Rasmussen, who states that there is no institutional record indicating that Mr. Hawkins successfully filed a Grievance Appeal to the Warden/designee and that there is no institutional record that Mr. Hawkins ever submitted an appeal to the Grievance Manager. *Id.* ¶¶ 32–33.

Mr. Hawkins disputes these facts. In his summary-judgment response—which he verified under penalty of perjury—he states that he submitted an appeal to the Warden/designee on April 20, 2021, by placing it in the grievance box between the large and small dining halls at CIF. Dkt. 29 at 4. He also states that he had not received a response to his appeal as of May 10, 2021, so he "appealed to the Department Offender Grievance Manager by mailing [his appeal] to the Department Offender Grievance Manager." *Id.* Finally, he states that, on November 2, 2021, he received in the mail a return of his second-level appeal. *Id.* The response is signed by Ms. Rasmussen, is dated November 2, 2021, and indicates that Mr. Hawkins's grievance was received on November 2, 2021. Dkt. 28-2. It states, "Per policy and procedure all step II appeals must be initiated through the Facility Grievance Administrator for electronic submission to the Final

Reviewing Authority. Appeals mailed directly to the final reviewing authority will not be accepted and returned." *Id.*

Mr. Hawkins filed this lawsuit on May 26, 2021—a little more than two weeks after he mailed his second-level appeal to the Department Offender Grievance Manager and several months before his second-level appeal was returned to him. Dkt. 1.

## III.
## DISCUSSION

The defendants seek summary judgment and argue that Mr. Hawkins failed to exhaust his available administrative remedies as required by the PLRA. The PLRA requires that a prisoner exhaust his available administrative remedies before bringing suit concerning prison conditions. 42 U.S.C. § 1997e(a); *see Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532 (citation omitted). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006) (footnote omitted); *see also Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006) ("'To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)). Thus, "to exhaust administrative remedies, a prisoner must take all steps prescribed by the prison's grievance system." *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004). It is the defendants' burden to establish that the administrative process was available. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an

5

affirmative defense, the defendants must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it.").

For purposes of summary judgment, the Court credits Mr. Hawkins's sworn statement that he properly submitted a first-level appeal to the Warden/designee on April 20, 2021. But the undisputed evidence shows that Mr. Hawkins did not file a second-level grievance appeal in compliance with the IDOC grievance policy before filing this action. By his own admission, he mailed his second-level grievance appeal directly to the Grievance Manager, but the policy unambiguously required him to submit it to Grievance Specialist.

Mr. Hawkins claims that he *did* comply with the grievance policy because the policy states, "If after receipt of the appeal response, the offender is still dissatisfied, or no response is received within the time frame, they may appeal *to the Department Offender Grievance Manager*." Dkt. 29 at 4 and dkt. 28-2 at 7–8 (referring to dkt. 25-2 at 13). Construing his response liberally, the Court understands Mr. Hawkins to be arguing that inmates are allowed to file a second-level appeal if they do not receive a timely response to their first level appeal and that the to use of the word "to" means that inmates are allowed to mail their second-level appeals directly to the Grievance Manager.

Mr. Hawkins is correct that the policy allowed him to file a second-level appeal when he did not receive a timely response to his first-level appeal. But he is not correct that the policy allowed him to send that second-level appeal directly to the Grievance Manager. Instead, the policy makes clear that the sentence stating that an inmate may appeal "to" the Grievance Manager merely identifies the person to whom a second-level appeal should be directed, not the manner for filing the second-level appeal. Immediately below that sentence in the policy appears a section titled "Department Offender Grievance Manager Appeals," which set out the process for filing such an

appeal, which is to submit the appeal to the Offender Grievance Specialist, who in turn scans the appeal into the grievance database for the Department Offender Grievance Manager's review. Dkt. 25-2 at 13. The undisputed facts establish that Mr. Hawkins failed to follow this process.

Apparently based on the fact that Ms. Rasmussen signed the form returning his second-level appeal in November 2021, Mr. Hawkins also argues that Ms. Rasmussen "intercepted [his] grievance appeal form going to the Department Offender Grievance Manager, and held it for 6 months to prevent me from exhausting all my administrative remedies." Dkt. 29 at 5. Mr. Hawkins has not established personal knowledge of these facts, *see* Fed. R. Civ. P. 56(c)(4) ("[a]n affidavit or declaration used to support or opposed a motion must be made on personal knowledge"), and no reasonable jury could conclude that Ms. Rasmussen intercepted Mr. Hawkins's second-level appeal and held it for six months simply from the fact that she signed the return form in November 2021. To the extent Mr. Hawkins relies on evidence related to what he believes is Ms. Rasmussen's mishandling of other grievances to support this inference, *see, e.g.*, dkt. 28-3, such evidence is not admissible to prove that she interfered with Mr. Hawkins's second-level appeal on this occasion, *see* Fed. R. Evid. 404(b) ("Evidence of any other crime, wrong, or act is not admissible to prove a person's character to show that on a particular occasion the person acted in accordance with the character.").

Finally, Mr. Hawkins asks the Court to sanction Ms. Rasmussen for committing what he describes as "perjury" because she submitted an affidavit stating that he never submitted a first- or second-level appeal, and he has provided evidence showing that he did submit such appeals and suggesting that she knew about them. *See, e.g.*, dkt. 29 at 6. The Court declines to issue such sanctions. There is no evidence that Ms. Rasmussen was acting in bad faith when she signed her affidavit, and her statements caused Mr. Hawkins no harm because the Court has accepted his

contrary narrative as true for purposes of summary judgment.

Because Mr. Hawkins failed to follow the proper process for submitting a second-level appeal, he failed to exhaust his administrative remedies before filing this suit. *See Dole*, 438 F.3d at 809 (requiring a prisoner to exhaust administrative remedies in "the place, and at the time, the prison's administrative rules require") (cleaned up). The consequence of this failure is that his claims must be dismissed without prejudice. *Ford,* 362 F.3d at 401 (holding that "all dismissals under § 1997e(a) should be without prejudice.").

## IV.
## CONCLUSION

For the reasons explained above, the defendants' motion for summary judgment, dkt. [25], is **GRANTED**, and the action is **DISMISSED WITHOUT PREJUDICE**. Judgment consistent with this Order shall now issue.

**IT IS SO ORDERED.**

Date: 5/19/2022

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

RAYMOND HAWKINS
885871
PENDLETON - CORRECTIONAL INDUSTRIAL FACILITY
CORRECTIONAL INDUSTRIAL FACILITY
Inmate Mail/Parcels
5124 West Reformatory Road
PENDLETON, IN 46064

Gustavo Angel Jimenez
INDIANA ATTORNEY GENERAL
gustavo.jimenez@atg.in.gov