UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RAYMOND HAWKINS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:21-cv-01396-JMS-MJD ) |
| WENDY KNIGHT, SGT DUPREE, | ) ) ) ) |
| Defendants. | ) |

**Order Denying Motion to Alter or Amend Judgment**

The Court previously granted Defendants' motion for summary judgment, finding that Plaintiff Raymond Hawkins failed to exhaust administrative remedies before filing this suit as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). Dkt. 33. The Court entered judgment and dismissed Mr. Hawkins's case without prejudice. Dkt. 34. Mr. Hawkins then filed a motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e). Dkt. 35. For the reasons explained below, that motion is **denied**.

## I.  Background

The Court granted Defendants' motion for summary judgment on the issue of exhaustion because the undisputed material facts established that Mr. Hawkins failed to file a second-level appeal in the manner specified by the Indiana Department of Correction's grievance procedure. Dkt. 33. Specifically, Mr. Hawkins admittedly mailed his second-level appeal directly to the Department Offender Grievance Manger, but the policy required that he submit the second-level appeal to the Offender Grievance Specialist, who would then scan the appeal form and transmit it to the Department Offender Grievance Manager. *Id.* at 6–7.

In so ruling, the Court rejected Mr. Hawkins's argument that the policy allowed him to mail the second-level appeal directly to the Department Offender Grievance Manger. Mr. Hawkins had supported his argument by noting that the policy said, "If, after receipt of the appeal response, the offender is still dissatisfied, or no response is received within the time frame, they may appeal to the Department Offender Grievance Manager." *Id.* The Court explained:

> [Mr. Hawkins] is not correct that the policy allowed him to send that second-level appeal directly to the Grievance Manager. Instead, the policy makes clear that the sentence stating that an inmate may appeal "to" the Grievance Manager merely identifies the person to whom a second-level appeal should be directed, not the manner for filing the second-level appeal. Immediately below that sentence in the policy appears a section titled "Department Offender Grievance Manager Appeals," which set out the process for filing such an appeal, which is to submit the appeal to the Offender Grievance Specialist, who in turn scans the appeal into the grievance database for the Department Offender Grievance Manager's review. Dkt. 25-2 at 13. The undisputed facts establish that Mr. Hawkins failed to follow this process.

*Id.*

The Court also rejected Mr. Hawkins's argument that he had been prevented from exhausting administrative remedies. *Id.* at 7. The Court explained:

> Apparently based on the fact that Ms. Rasmussen signed the form returning his second-level appeal in November 2021, Mr. Hawkins also argues that Ms. Rasmussen "intercepted [his] grievance appeal form going to the Department Offender Grievance Manager, and held it for 6 months to prevent me from exhausting all my administrative remedies." Dkt. 29 at 5. Mr. Hawkins has not established personal knowledge of these facts, *see* Fed. R. Civ. P. 56(c)(4) ("[a]n affidavit or declaration used to support or opposed a motion must be made on personal knowledge"), and no reasonable jury could conclude that Ms. Rasmussen intercepted Mr. Hawkins's second-level appeal and held it for six months simply from the fact that she signed the return form in November 2021.

*Id.*

Finally, the Court denied Mr. Hawkins's request that the Court sanction Ms. Rasmussen for what he described as "perjury" because she submitted an affidavit stating that he never submitted a first- or second-level appeal, and he had provided evidence showing that he did submit such appeals and suggesting that she knew about them. *Id.* The Court explained that there was no

evidence that Ms. Rasmussen acted in bad faith when she signed her affidavit and that the statements caused Ms. Rasmussen no harm because the Court accepted his contrary narrative as true for purposes of summary judgment. *Id.* at 7–8.

## II.    Legal Standard

Relief under Rule 59(e) is an "extraordinary remed[y] reserved for the exceptional case." *Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015) (cleaned up). It is granted to correct a manifest error—factual or legal—or to consider newly discovered evidence. *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013). A Rule 59(e) motion is not to be used to "rehash" previously rejected arguments. *Vesely v. Armslist LLC*, 762 F.3d 661, 666 (7th Cir. 2014). In addition, a Rule 59(e) motion "does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." *A&C Constr. & Installation, Co. WLL v. Zurich Am. Ins. Co.*, 963 F.3d 705, 709 (7th Cir. 2020) (cleaned up).

## III.    Discussion

Mr. Hawkins does not bring any newly discovered evidence to the Court's attention with his Rule 59(e) motion. Instead, he contends that the Court committed manifest factual or legal errors.

First, he argues that the Court erred in finding that the grievance policy required him to submit his second-level appeal to the Grievance Offender Specialist, not directly to the Department Offender Grievance Manager. Dkt. 35 at 3. In support, he notes that the portion of the grievance policy requiring submission of a second-level appeal to the Offender Grievance Manager applies only "[i]f the offender wishes to appeal the Warden's/designee's appeal response." *Id.* at 3–5 (citing dkt. 25-2 at 13). Because he did not receive a response to his first-level appeal, he contends that

3

this section does not apply to him, and instead he was entitled to proceed under the portion of the policy that states: "If, after receipt of the appeal response, the offender is still dissatisfied, or no response is received within the time frame, they may appeal to the Department Offender Grievance Manager." *Id.* He also argues that the grievance policy fails to provide a clear method for filing a second-level appeal when the inmate does not receive a response to his first-level appeal. *Id.* at 4.

Mr. Hawkins is now arguing that the procedure for appealing "the Warden's/designee's appeal response" does not apply when an inmate fails to receive a response. He also seems to be arguing the grievance policy is ambiguous with respect to how to file a second-level appeal. But those are arguments he could have raised in his initial summary-judgment response. He failed to do so. Thus, neither argument is appropriate for a Rule 59(e) motion. *A&C Constr.*, 963 F.3d at 709.

Regardless, the grievance policy provides, "At any level of the administrative process, including the final level, if the offender does not receive a response within the time allotted for response, including any proper extension, the offender may consider the absence of a response to be a denial at that level." Dkt. 25-2 at 6. That is, under the policy, receiving no timely response *is* a response in that it counts as a denial. *See also* dkt. 36 (Defendants arguing that the procedure for appealing a denial of a first-level appeal applies when an inmate does not receive a response to his first-level appeal). The Court did not commit a manifest factual or legal error in concluding that the process for appealing "the Warden's/designee's appeal response" applies when an inmate fails to receive a response.

Second, Mr. Hawkins argues that the Court erred in overlooking the fact that Ms. Rasmussen returned his second-level appeal to him almost 6 months after he claims he submitted that second-level appeal. Dkt. 35 at 8. Mr. Hawkins now claims that it is "more likely than not"

that the Department Offender Grievance Manager returned his second-level grievance to Ms. Rasmussen within 10 business days because the grievance policy requires that second-level appeals be resolved within 10 business days or be considered denied. *Id.* Thus, he contends, it "is clear that grievance specialist L. Rasmussen had this grievance appeal in her possession (in which she stated in her affidavit she didn't and still didn't get it to the proper authority to address it, (which is her job) not acting in good faith." *Id.* at 8–9 (parentheses appear as they do in the original). He also emphasizes that Ms. Rasmussen's second-level response means that she must have perjured herself and acted in bad faith when she stated in her affidavit that he had never filed a first- or second-level appeal. *Id.* at 6–7.

To the extent that Mr. Hawkins is arguing that the Court erred in his rejecting his claim that Ms. Rasmussen intercepted his second-level grievance appeal and held it, thereby thwarting his ability to file a timely appeal, he is merely rehashing arguments that the Court already rejected, which is not appropriate for a Rule 59(e) motion. *Vesely*, 762 F.3d at 666. And to the extent that Mr. Hawkins is advancing a new argument in support of that claim—namely, that the Department Offender Grievance Manager must have returned his second-level appeal within 10 business days, thereby suggesting that Ms. Rasmussen held the appeal for several months—he is raising an argument that could have been raised in his summary-judgment response. He failed to do so, and he cannot raise the argument now. *A&C Constr.*, 963 F.3d at 709.

Regardless, the Court did not overlook the fact that Ms. Rasmussen returned the second-level appeal 6 months after Mr. Hawkins claimed to submit his second-level appeal. The Court explicitly acknowledged that fact and concluded that there was no admissible evidence from which a reasonable jury could conclude that Ms. Rasmussen had held the second-level appeal, thereby preventing Mr. Hawkins from timely pursuing it. Dkt. 33 at 7. Mr. Hawkins identifies no error

with that conclusion, and his speculation—unsupported by any evidence—about what happened after he filed his second-level appeal is insufficient to warrant reconsideration. *See SportFuel, Inc. v. PepsiCo.*, 932 F.3d 589, 601 (7th Cir. 2019) (cleaned up) ("speculation will not suffice to defeat summary judgment").

To the extent that Mr. Hawkins is arguing that the Court erred in finding that there was no evidence that Ms. Rasmussen acted in bad faith when she stated that there was no record that Mr. Hawkins filed a first- or second-level appeal in her summary-judgment affidavit, he is merely rehashing arguments that the Court previously rejected or adding additional points that he could have and should have raised in his summary-judgment response. Regardless, Mr. Hawkins fails to identify any error with the Court's alternative basis to decline sanctions against Ms. Rasmussen— namely that any alleged misstatements caused him no harm because the Court accepted for purposes of summary judgment that Mr. Hawkins had timely filed a first-level appeal and had attempted to file a timely second-level appeal by sending it directly to the Department Offender Grievance Manager. Dkt. 33 at 4–5, 7. Put another way, even if—contrary to her affidavit—Ms. Rasmussen knew at some point that Mr. Hawkins had filed a first-level appeal and tried to file a second-level appeal, Defendants would still be entitled to summary judgment on the question of exhaustion because it was undisputed that Mr. Hawkins failed to use the proper procedure for initiating a second-level appeal.

Mr. Hawkins has not established that the Court committed manifest factual or legal error in granting Defendants summary judgment on the question of exhaustion or declining to sanction Ms. Rasmussen.

### IV. Conclusion

For the reasons stated above, Mr. Hawkins's motion to alter or amend judgment, dkt. [35], is **denied**.

**SO ORDERED.**

Date: 10/19/2022

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

RAYMOND HAWKINS
885871
PENDLETON - CORRECTIONAL INDUSTRIAL FACILITY
CORRECTIONAL INDUSTRIAL FACILITY
Inmate Mail/Parcels
5124 West Reformatory Road
PENDLETON, IN 46064

Gustavo Angel Jimenez
INDIANA ATTORNEY GENERAL
gustavo.jimenez@atg.in.gov